The next case is United States v. Martinez, case number 19-2010. Good morning, Your Honors, and please the Court. John Anderson on behalf of the United States. I do anticipate reserving approximately five minutes of my time this morning for rebuttal. Your Honors, the central body of facts as found by the District Court belies the conclusion that the encounter between Mr. Martinez and the Border Patrol agents at the truck stop near Lordsburg, New Mexico was a detention of any sort requiring reasonable suspicion rather than a consensual encounter. And specifically, those facts are the following, that the encounter occurred during daylight hours, that the Border Patrol in no way blocked Mr. Martinez's ability to exit his vehicle from the truck stop parking lot, that during his conversation with Mr. Martinez, he stood three to five feet from him, that he used a non-threatening demeanor, that he used a conversational tone, that no weapons were drawn, and I would also point out that the record contains no suggestion that the Border Patrol agent, Agent DeHaarce, ever requested or retained any documentation from Mr. Martinez. On those facts, the District Court did find that it was an investigative detention, and the District Court's conclusion in that regard appears to focus on a couple of things. In particular, the District Court seems to place weight on the fact that Agent DeHaarce did not ask permission to speak to Mr. Martinez before he began the conversation. So in other words, he said, good morning, are you a U.S. citizen? He did not say, can I ask you a few questions? There is also, the District Court appears to place weight on the fact that he did not advise Mr. Martinez specifically of his right to terminate the encounter. And in that note, I would point to this Court's decision in Ringgold, where it says it doesn't, I'm sorry, in Thompson, it says the failure to advise of the right to terminate the encounter should carry little to no weight in the analysis of whether the encounter constitutes a seizure or simply a consensual encounter. Finally, Your Honors, the District Court appeared to put substantial weight on the nature of the questions that Agent DeHaarce posed. And there were two of those questions. The entire encounter consisted of two questions. The first question is, are you a U.S. citizen? And the second question is, the people in the back of the car, are they your family? The District Court concluded that those questions were, I believe the District Court's suggestion was that they were both incriminating and accusatory. And those are slightly different concepts. But I think the District Court used both of those words to describe the questions that were posed by the Border Patrol agent to Mr. Martinez. The United States would disagree with the suggestion that those questions are accusatory or incriminating. Certainly the question, are you a U.S. citizen, is not an incriminating or an accusatory one. And remember... Can I stop you a minute? You were reciting the various factors that you thought the District Court relied on. At least that's what I thought you were doing in suppressing. And you said there were three. Are those the only three you think that it relied on? Your Honor, I think there's a section in the Court's opinion where it talks about the facts that are relevant. But those are the initial facts that I brought up are the ones that I think the District Court... In the closing paragraph. I think it refers to those three facts. It certainly... The three facts you're talking about, the ones that I began with? The ones you began with. I just want to make sure, in my mind when I was reading the District Court's opinion, while it didn't... There was a certain closing paragraph that summarized some facts. But then up to that point, it had indicated that it was relying on some additional facts. At least as I read it, and I'm interested if you read it the same way, which one was the public place, the fact that this... It said it wasn't a public place. But then it talked about the fact that there were officers. The District Court said the officers weren't in view of anyone when they were talking with this defendant. I couldn't tell if it was adding that as a factor, even though it said it was a neutral factor. I'm interested in your opinion on that. Certainly, Your Honor. The way I read that factor is that the court considers that... I think the court said it's not determinative. I read that as saying it's not weighing in favor of either the government or Mr. Martinez in the analysis. And the way I read it is that the court is saying, well, it's during daylight hours, it's in a public place, a gas station parking lot, but it's in the last gas pump on the outside. Maybe the gas pump blocks the view of other patrons of that encounter. So the court is going to say it doesn't go in either column. And you disagree with it not going in either column as I read your brief? Yes, Your Honor. I don't think it is a particularly heavy weight to go in the government's column, but I do for the reasons that, one, there are the witnesses who are present in the car, but also from the photographs that were submitted to the District Court, you can see this is... In the middle of the parking lot, it is very different from other cases in which this court has found the type of non-public atmosphere that gives rise to a coercive environment. So this is not a room inside a police station. This is not that type of atmosphere where there is simply no members of the public available to provide a counterweight to the law enforcement presence. I mean, this gas pump's actually rather public, isn't it? People coming and going all the time. It is, Your Honor. And again, I don't want to infringe on the District Court's fact-finding function, and I recognize that that is reviewed for clear error, but when you do look at it, there is a daylight hour, this is a gas station, there's a convenience store there, there are members of the public around. So I would agree with you, Judge Carson, in that respect. I'd like to back up to the words that were used, whether they were accusatory. Yes, Judge. You're in Lordsburg, New Mexico, and the first question is, are you a citizen? I can't think of any reason why that question would be asked, except that you're investigating a crime. Can you find any reason that you would ask an ordinary citizen, are you a citizen, other than that you are investigating the crime of illegal entry? Well, Judge McKay, I would give you two answers to that. One is that the fact that the question, to accept your premise, the question may be, at best, incriminating in nature. And this court has said that the fact that a law enforcement officer asks an incriminating question is not in itself a problem. What matters is the manner in which the question is posed. To get to what I think is at the heart of your question, yes, those of us who travel in New Mexico from time to time, we stop at Border Patrol checkpoints and we're often asked, are you a U.S. citizen? That's perhaps the most common question that Border Patrol asks you when they encounter you in the first instance. So I don't see that being the type of inherently accusatory question that this court in prior cases has suggested gives rise to a coercive atmosphere that would make Mr. Martinez feel unable to... If it isn't accusatory, why are the police always asking everybody that question? There's no innocent reason other than to determine the violation of our immigration laws to ask that question. There isn't any other innocent meaning. Certainly, I can't disagree with the fact that it is a question that is investigatory in nature. That is, Border Patrol's charge is to identify people who are either crossing the border illegally or who are in the United States illegally, and that is perhaps the most salient question in that regard. But I think that when you look at the effect it has on a listener in terms of the ability to terminate the encounter and whether that so cows the listener, one needs to make sure... Remember that we look at that from the perspective of the innocent person, someone who in this case is not violating the law in any way. And when you look at it from that vantage, I would suggest that it is not the type of question that creates the type of coercive atmosphere. In support of that, I would offer the Supreme Court's decision from 1984 in Delgado. And Delgado presented a situation where he had immigration enforcement go into a factory and ask some pretty blunt questions to people. One of the scenarios that was described in the Delgado case, immigration agents came up and tapped someone in the back and said, where are your papers? And the court said, hey, that's nothing more than a classic consensual encounter. So I certainly agree with your concern on that, but that's how I would address it, Judge McKay. I mean, don't we have case law in the circuit where if I was filling up at this pilot truck stop here, that a police officer could walk up to me and say, hey, is that a stolen credit card you're using? I mean, that's consensual, isn't it? I think it is, Judge Carson, and that is the difference between what I would call an incriminating question and an accusatory question. If you say yes, you're incriminating yourself. But I think that that is not an accusatory question of the persistent or intrusive nature that this court has previously said would create a coercive environment in which someone would not feel at liberty to say, you know, I don't have time to talk to you today. I'm terminating the encounter. Go ahead. My sense of what the district court seemed to be saying, and it did cite the case law indicating that it's simply not relevant whether they ask incriminating questions unless those questions become coercive. And I think the case law cited was the accusatory, persistent, and intrusive such that they are coercive. The district court then said they were concluded that the question, the two questions were incriminatory and coercive. And in trying to determine what it based the coerciveness on, my sense was it was talking about some of these other factors such as they didn't, as in some of the other cases, the officers didn't go inside, they didn't get a Coke, they didn't have any initial discussions with him, where he headed, how's your day, nothing. Just walked right up and began this type of questioning. And my sense was that maybe that's what the district court was relying on. And if so, could you address whether that would be a factor that could make it coercive, just the nature of the opening questioning itself? Yes, and I agree with you, Judge Morris. That is certainly something that the district court did rely on. He said there was no pleasantry. There was a fairly immediate walk up, good morning. I think he introduced himself as a border patrol agent and immediately asked, are you a U.S. citizen? And that is something that we can consider as a factor, whether there was any preliminary conversation that would make it appear consensual. I suppose the court can certainly consider that. There was nothing else about it that suggested a coercive atmosphere. So obviously no weapons pointed, there was still a respectful distance, it was still a conversational tone. And there's some case left sided in my brief that suggests that simply going up to someone and asking questions is not going to in itself create that coercive atmosphere. So in other words, there's no requirement that there be discussion of the weather or travel plans or anything innocuous to create that type of environment. So that direct approach in and of itself is not going to create that type of coercive environment. If the court would permit me, I'd like to reserve the balance of my time for rebuttal. May it please the court, government counsel. My name is Rachel Nathanson and I represent Francisco Armando Martinez. Contrary to how the government characterized the facts in this case, here's what happened. Mr. Martinez was driving along a two lane highway in New Mexico. Coming toward him from the opposite direction is a marked border patrol pickup truck. The agents peer at him when they pass. There might have been three or more passengers in the back seat, but the agents aren't really sure. About two seconds later, they whip a U-turn and they start following Mr. Martinez. The agents don't see Mr. Martinez do anything wrong. They follow him for 10 or 11 miles north on Highway 113 in New Mexico and they keep a constant visual of him the entire time. No one is between the agents and Mr. Martinez. The agents stay close enough that they can see Mr. Martinez drive over Interstate 10 and they even stay close enough that they can see him turn left onto Interstate 10. And the agents follow Mr. Martinez onto the interstate. They still don't see him do anything wrong. Agent Ramirez testified that the agents were trying to develop reasonable suspicion, but they never developed any. Well, counsel, I'm going to cut in here because I've got a number of questions and I think we're all familiar with the facts. First of all, I understand there was a long period of the agents following Mr. Martinez, but I don't see where the district court explicitly relied on that in determining any of the factors weighed in favor of Mr. Martinez. And also, if it did rely on that, can you point me to any case law that would support in this type of situation where a defendant voluntarily leaves the road and voluntarily goes into a gas station area, gets out of his car and begins walking towards the convenience store or whatever's there, that somehow we would then still nevertheless factor in what happened in the last 20 miles or 5 miles or 10 miles, whatever it is, in terms of determining whether this was a consensual encounter? So that's, I'm sorry, a big long two-part question. Yes, Your Honor. So the district court did not make express factual findings that Mr. Martinez knew that he was being followed. And the government- I'm not asking that. Even if we inferred that, where did the district court rely on that anywhere in finding that this questioning was coercive? I don't see that the district court ultimately relied on that. I understand you seem to want to, but did the district court? The district court did state that Mr. Martinez, or that Ramirez, Agent Ramirez testified that Mr. Martinez got out of his vehicle, started walking toward the store and turned around because Mr. Martinez noticed that Agent Deharcy and Ramirez had parked behind the Monte Carlo. Right, but that's totally different than making this fact that they'd been following him somehow relevant to the consensual encounter issue. Well, Your Honor, I think a reasonable person who notices somebody park behind them at a gas pump normally doesn't turn around and approach that car. But here, in a situation where there are so many empty gas pumps, there's no dispute here that there were not- this was not a busy gas station at that time in the morning. There may have been one or two other cars around. But here where there were so many other gas pumps, that would suggest that parking right behind Mr. Martinez and directly approaching him- Well, I understand that. So I guess now we're getting off to another issue, which is where they parked, the fact that they didn't block him, and that weighs in the government's favor. I was just trying to find out what this argument- what your argument about the fact that they followed him has to do with anything and whether it had anything to do with the district court's analysis of the various factors. Yes. Well, the argument is that the district court had to look at the totality of the circumstances. And what the government has been trying to do throughout its briefing and discussion is more of a divide and conquer analysis, looking at specific factors, what happened in the situation, and saying why it's not a- why it is a consensual versus a non-consensual encounter. Let's talk about one factor in particular that the government says should have weighed in its favor, at least somewhat, and that's the public place. Can you point me to any case like this where there's been a fairly large-looking gas station right off the highway with a convenience store attached, and there's people at the other pumps, there's cars parked at the gas station, there's presumably people inside, and yet the district court says this isn't- this doesn't- this isn't a public place, essentially, because there's no evidence that there's any particular individuals who are in the sight view of this interaction. I don't- I- that's- it's not a legal error to require that some individuals or patrons be within view or hearing distance or something. I can't find any case law like that. So first of all, Your Honors, I want to make sure that it's clear that the photograph that the government provided in its briefing is not from when the incident occurred. I understand. So there are likely- there are more vehicles pictured- Well, this was described- it was described by the district court as being a gas station off the highway with multiple pumps, people at the other pumps. I just- I can't- based on our prior case law, I can't imagine not calling that a public place. They didn't- I mean, if they had taken him aside, if they'd taken him around the building, anything that might have pulled him outside of, you know, the area. But could you point me to any support for what the district court specifically said here, which is this doesn't weigh in the government's favor because no one was in sight view during that moment? Yes, Your Honor. So first of all, the testimony that there was- that there were only one or two other cars at the pumps. I think that the best case for this court to look at is United States v. Hernandez. People at the pumps. There could have been one or two people at the pumps, yes, but not at that particular- It's a public place. What about that isn't public, counsel? So, Your Honor, under United States v. Hernandez, this court talked about how a location that is accessible to the public can be considered more similarly to a non-public place. What were the facts there? That was a case where a young man was walking along a street, a public street, along a construction zone, completely open to the public, but there just happened to be nobody else around who saw what was happening. And I think that this case is very similar. And this was in the light of day in a retail establishment off the highway and there's other people around. How does that compare? Well, even in Hernandez, somebody could have walked by and could have seen what was happening, but they didn't. And that's the same situation here. Okay. Let's assume that- disagree. Let's assume we disagree with the government. How would that impact the district court's analysis if that should have weighed- the public place should have weighed in favor of the government here? There were still numerous other factors that the court considered to find that there was a non-consensual encounter. And one of those factors was the manner in which the agent stopped behind the Monte Carlo. In addition to finding that the agents had followed for 20 to 21 miles, the court noted that the agents parked only 10 feet behind the Monte Carlo. And didn't block- our case law talks about whether they block somehow the defendant's ability to leave. How did they do that here? Well, in addition, the other way, the manner that they stopped behind the Monte Carlo was that the agents immediately exited the vehicle simultaneously. The court emphasized that. And essentially surrounded the vehicle. You have Agent Deharce on the passenger side and Agent Ramirez immediately going to the back passengers, the other side of the vehicle. So that would make a- But he was- but your defendant was standing between the gas pump and right next to his driver's side door, is that correct? Yes. So in comparison to some of our other cases, we talk about whether the defendant was free to leave. His vehicle wasn't blocked in. He was standing next to his driver door. I guess that's also where I'm trying to get you to address, how was he not free to leave based on the placement of the officer's car or their own placement? The district court emphasized that the agents made a direct approach to Mr. Martinez and immediately questioned him. They immediately asked an accusatory question. And your Honor had asked the- And how is that accusatory rather than incriminatory, which we've said is irrelevant? Well, the district court found that a reasonable, objective person under the circumstances, looking again at the totality of the circumstances, would find the question of, are you a United States citizen, to be accusing him of not being a United States citizen. Of course, when we talk about coerciveness, we talk about- we say that a question is coercive based on the manner of the questioning. And the factors you're referring to don't have anything to do with the manner of the questioning. The manner of the questioning can be whether a question is accusatory. And if- Any incriminating question is also accusatory. In order for something to be accusatory, one would have to look at the totality of the circumstances. But we're looking at a reasonably innocent person standard here, too. Yes. And the government had noted that at Border Patrol checkpoints, people are asked whether they're a United States citizen. But I would like to remind the court that this was not a Border Patrol checkpoint. This was not a port of entry. This is not a place where somebody is expecting to be stopped by Border Patrol and asked whether they're a United States citizen. In addition, the court looked at a number of factors. Finally, the court did not advise Mr. Martinez that he was allowed to terminate the encounter. So given all of the factors that the court considered with the direct approach from a at a gas station where there are many other pumps that this Border Patrol car could have parked at, but instead parked immediately behind, that would suggest to a reasonable objective person that this Border Patrol vehicle has a particularized interest in me and that they would have to speak to that Border Patrol agent, not that they were- that the Border Patrol agents were going to get gas. So what's your best case that would tell us that this was not a consensual encounter? The best case that we have in the briefing is United States versus Jones from the Fourth Circuit. And there are a number of parallels between this case and that case. Let me ask you another question, because I'll go read that and you're getting short on time. What's your best Tenth Circuit case? The best Tenth Circuit case is going to be United States versus Hernandez, where you have a person in a public area that is treated as a non-public area because of the lack of other people observing the situation. In addition, that there were two uniformed officers that were following this person. These agents here followed my client for a long distance. I guess one difference you have from Hernandez, though, is that in this case, it's undisputed that there were other people around. And this is a high traffic area. And in that case, I think there was nobody around, but there could have been. Is that right? I mean, isn't that sort of a remarkable difference? There could have been other people around, but I don't think there were no findings that this was a high traffic area. Lordsburg is a rather small town. OK, this is on I-10. Yes, it's early in the morning. The government tries to, again, go through a divide and conquer analysis, which is improper. The court needs to look at the totality of the circumstances. The court considered that there were two uniformed and armed officers, which under United States v. Hernandez, they do recognize that that increases the coerciveness of an encounter. In terms of the manner in which the agents question Mr. Martinez, the government's cites to Derek v. Peterson. But that's not really applicable here because that was a state habeas case where the court was looking at the ultimate issue of whether a confession was voluntary or not, and whether a confession is voluntary depends on whether there's coercive police activity. And that's really a legal term of art. But we have talked about coerciveness being important in this context as well, Fourth Amendment issue, whether this was a consensual issue, correct? Yes. But here, whether there was simply an accusatory question, that would be a finding of fact subject to the clearly erroneous review rather than de novo review. And finally, the lack of advisement of the right to terminate the encounter was important here when somebody is approached quickly from behind and asked an open question. So feel free to leave the encounter. Thank you. Thank you, counsel. Morning again, Your Honors. If I may, I would like to touch briefly on the issue that counsel raised and I think that was raised earlier by Judge McKay as to the nature of an accusatory question and what that means for this Court's case law in the area of Fourth Amendment analysis. The case I'd like to bring to the Court's attention is United States v. Jones. And we have a number of Jones cases in this briefing. So this is Jones at 701 F. 3rd at 1305. It's a Tenth Circuit case. And in that case, you had a law enforcement officer who went up, leaned on a defendant's car as he emerged from, I believe it was a gardening store of some type, and said, I'm here for your marijuana plants. And that the court recognized to be an accusatory question or an accusatory statement. But the court nonetheless said that did not result in a seizure. And what this court said was that while the statement was accusatory, no reasonable person would have been so cowed by such an accusatory assertion that he would have about the business and go about his business. And in reaching that conclusion, the court looked at the surrounding environmental factors. So the tone of the statement, where the officer was situated, things of that nature, the other type of factors that we've been talking about here today and that are prevalent in this Court's Fourth Amendment case law. Why don't those weigh against the government here then? We've got the officers coming up, parking directly behind him, two officers getting out, both officers questioning, not just one officer. Immediately questioning, not getting, not beating around the bush, going straight to the accriminating accusatory questions. Why, why don't those factors weigh against you here? Well, first judge, there was, I think it was only one officer who engaged the initial questioning with Mr. Martinez. The other officer was on the other side of the car and only. Did he ask a question? He did not, Your Honor. He only became involved once Mr. Martinez lowered the window. He then engaged with the passengers in the vehicle and determined that they were. So there was nothing else. I mean, yes, behind the vehicle. But remember, the district court found that the officer stood at what I think is a respectful distance, three to five feet away from him and engaging him in conversation. Did not block the manner of egress. But what's a reasonable person to think when officers that a reasonable person you could infer would have known have been following them for 20 miles? Then gets right off the highway and follow and follows him into the gas station and parks immediately behind him instead of anywhere else. At this station. What, why isn't that really, why shouldn't we do that against your government? Well, Your Honor, for us to the, and I see my time is up. If I may complete my answer to the court's question. As to the following of the, of the vehicle for a number of miles, again, the district court, as the court has pointed out, did not make a finding on that. And our position is that this court should not draw an inference beyond the facts as found by the district court. Again, in terms of the parking behind them, there was nothing about, there were not sirens blaring, there were not guns drawn. There was a, yes, a parking behind the vehicle, but nothing else about that environment. And again, no blocking of the exit path that would create the type of encounter that would make counsel Martinez feel unable to terminate that encounter. It seems to me everybody has conceded what happened on the, on the following, whether the court put that in its opinion or not. Have you contested those facts? I'm sorry, Judge. Judge, I'm asking you. Please go ahead. Yes, I'm sorry. Sorry. I got it. That's all right. No, please. Judge, is, are you referring to the contest, which facts? Yeah, the facts that the police turned around, followed them, followed them in and parked behind. No, Your Honor, those facts are not contested. Where, or I think. Well, your argument is then that the court didn't rely on it. Again, if I may answer Judge McKay's question. The, the government's point is that there is no finding from the district court that Mr. Martinez was aware of being followed that would have created in him a sense of being the subject of particularized suspicion from law enforcement. Thank you, Counselor. Thank you. All right, Counselor, thank you very much for your, for your helpful argument. Counsel will be excused and the case is submitted.